**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| ANN ELLISON-WOOD, Individually and as Representative of the Estate of Eddy Wayne Wood, Deceased,<br><br>*Plaintiff*,<br>vs.<br><br>CHEMGUARD, INC. and TYCO FIRE PRODUCTS LP, Individually and as Successor in Interest to Ansul Company,<br><br>*Defendants*. | Civil Action No. 4:22-cv-1057<br><br><br>NOTICE OF REMOVAL |

Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "**Chemguard**"), by and through undersigned counsel, hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the District Court of Tarrant County, Texas to the United States District Court for the Northern District of Texas. As grounds for removal, Chemguard alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. Plaintiff Ann Ellison-Wood is the widow and representative of the late Eddy Wayne Wood, a longtime firefighter. Plaintiff alleges that Mr. Wood's brain cancer and death were caused by his occupational exposure to perfluorooctanoic acid ("**PFOA**") and/or perfluorooctane sulfonic acid ("**PFOS**") contained in firefighting agents known as aqueous film-forming foams ("**AFFF**"). She seeks to hold Chemguard liable for its alleged conduct in designing, manufacturing, and

selling AFFF that contained PFOA or PFOS. Chemguard has recently learned that some of the AFFF that Mr. Wood allegedly was exposed to was "**MilSpec AFFF**" that Chemguard designed and manufactured in accordance with the military's rigorous specifications. At all relevant times, those specifications have expressly or effectively required MilSpec AFFF to contain "fluorocarbon surfactants"—the family of chemicals that, as the military has long known and accepted, includes PFOA and PFOS and chemicals that can break down into those compounds.[1] Accordingly, Chemguard intends to assert the federal "government contractor" defense in response to Plaintiff's claims. *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988).

2. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Chemguard is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. Multiple courts have held that AFFF manufacturers may remove cases to federal court under that provision where the plaintiff's claims plausibly arose at least in part from the use of MilSpec AFFF. *See infra* ¶ 13. Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

3. This action was filed on November 24, 2021, in the District Court of Tarrant County, Texas, Cause No. 048-330535-21 (**Exhibit A-3, Plaintiff's Original Complaint**). Plaintiff alleges generally that the Defendants, including Chemguard, designed, manufactured and sold AFFF; that the AFFF was unreasonably dangerous because "the primary chemicals (PFOA and PFOS) which render AFFFs useful also cause cancer in their users"; and that Defendants' conduct

---

[1] In fact, Chemguard's AFFF has never contained PFOS or compounds that can break down into PFOS.

**CHEMGUARD'S NOTICE OF REMOVAL** 2

caused Mr. Wood's illness and death. (**Ex. A-3**, ¶¶ 26-28). Plaintiff asserts claims against Defendants for strict liability for defective design (*id.* ¶¶ 25-28) and for gross negligence (*id.* ¶ 34).

4. Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 124(a)(2) and 1441(a) because the District Court of Tarrant County, Texas, is located within the Northern District of Texas, Fort Worth Division.

5. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(3). The case stated by the initial pleading was not removable. Chemguard was first able to ascertain that the action is removable when Plaintiff served her written discovery responses on November 4, 2022, disclosing that Mr. Wood's injuries arose in part from his alleged exposure to MilSpec AFFF manufactured by Chemguard. *See infra* ¶ 18.

6. Chemguard is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under Section 1442(a)(1). *See, e.g.*, *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

7. Pursuant to 28 U.S.C. § 1446(a), copies of "all process, pleadings, and orders served upon [Chemguard]" in this action as of this date are being submitted to the Court, collectively, as **Exhibit A-3 through A-35**.[2]

---

[2] Pursuant to Local Rule 81.1(a)(4)(A)-(B), "an index of all documents that clearly identifies each document and indicates the date the document was filed in state court" . . . and "a copy of the docket sheet in the state court action" are included at **Exhibits A-1 through A-2** attached hereto. In accordance with Local Rule 81.1(a)(1)-(2) and (a)(4)(D), "a completed civil cover sheet;" "a supplemental civil cover sheet;" and "a separately signed certificate of interested persons that complies with [Local Rule] 3.1(c) or 3.2(e)" are attached hereto, respectively, as **Exhibit B**, **Exhibit C**, and **Exhibit D**.

**CHEMGUARD'S NOTICE OF REMOVAL**                                                                                                  3

8.     Pursuant to 28 U.S.C. § 1446(d), Chemguard is serving a copy of this Notice of Removal upon all other parties to this case, and is filing a copy with the Clerk of the District Court of Tarrant County, Texas.

9.     By filing a Notice of Removal in this matter, Chemguard does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Chemguard specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

10.    Chemguard reserves the right to amend or supplement this Notice of Removal.

### REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(A)(1)

11.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal by a private entity is appropriate under this provision where the removing defendant alleges that: (a) it is a "person" within the meaning of the statute; (b) it acted pursuant to a federal officer's directions; (c) its actions taken pursuant to a federal officer's direction are connected or associated with the lawsuit; and (d) it can assert a "colorable" federal defense. *See, e.g., Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017).

12.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants that have acted on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). That is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O.*

*Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). That important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted).

13.  All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries have been caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018). The court currently overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation (the "**MDL**") has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiff's injuries have been caused, at least in part, by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("**MDL Order 1**"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("**MDL Order 2**"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("**MDL Order 3**"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[3]

---

[3] Following removal, Chemguard intends to designate this action for transfer to the MDL.

**CHEMGUARD'S NOTICE OF REMOVAL**                                                                 5

## A. MilSpec AFFF

14. AFFF is a uniquely effective agent for suppressing and extinguishing liquid fuel fires. The components responsible for the effectiveness of AFFF are fluorocarbon surfactants, which spread rapidly to form a molecular barrier across the surface of the fuel, thereby depriving it of the oxygen needed to maintain the fire. The United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969.[4] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[5]

15. In general, there are two categories of AFFF. *See Nessel*, 2021 WL 744683, at *1. The first is MilSpec AFFF, which since the 1960s, has been used on military bases and Navy ships to put out fires, save lives, and protect property. MilSpec AFFF is also used in various civilian settings. Wherever it may be used, MilSpec AFFF is a military product that is required to be designed and manufactured to exacting military specifications and is subject to testing requirements overseen by the military. The second category of AFFF is sometimes termed "commercial" AFFF. Like MilSpec AFFF, commercial AFFF contains fluorocarbon surfactants, but it is not subject to military specifications. Commercial AFFF is less expensive than MilSpec AFFF and is used by many civilian fire departments.

16. The design and manufacture of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times

---

[4] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[5] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

since then.[6] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[8] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

17. From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." The class of "fluorocarbon surfactants" includes PFOA and PFOS—the very compounds at issue in the Complaint here. This requirement has been in force for virtually the entire time period at issue in the Complaint. In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but as a practical matter no AFFF can meet the MilSpec's other requirements without using fluorocarbon surfactants. No AFFF not containing fluorocarbon surfactants has been qualified as meeting the MilSpec. Both before and after the 2019 amendment, the MilSpec has acknowledged that it is effectively impossible for manufactures to make MilSpec AFFF without certain amounts of PFOA or PFOS.

---

[6] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[7] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *Id.*

**CHEMGUARD'S NOTICE OF REMOVAL** 7

The MilSpec allows those compounds to be present in MilSpec AFFF at concentrations of up to 800 parts per billion.

18. The Complaint alleged simply that Mr. Wood had used and been exposed to "AFFFs," without specifying whether or was exposed to commercial AFFF, MilSpec AFFF, or both. On September 22, 2022, Chemguard and co-defendant Tyco Fire Products LP served Plaintiff with written discovery requests that included this Request for Production No. 2: "Please produce all documents relating to Mr. Wood's use of or exposure to AFFF." Plaintiff served her responses on November 4, 2022. In response to Request for Production No. 2, Plaintiff stated: "Plaintiff provides herewith bates labeled documents WOOD 01699–01739, which represent the response of Saginaw Fire Department, Brownwood Fire Department and North Richland Hills Fire Department to Plaintiff's Open Records Request. Based on the information reasonably available to Plaintiff at this time, Plaintiff has no other documentation within her actual or constructive possession, custody, or control with which to respond to this request." Among the products identified in the cited page range are MilSpec AFFFs manufactured and sold by Chemguard. Plaintiff thus has now represented that Mr. Wood was exposed to, and allegedly injured by, Chemguard's MilSpec AFFF.

B. **All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

    *1.* *The "Person" Requirement Is Satisfied*

19. The first requirement for removal under the federal officer removal statute is satisfied here because Chemguard, Inc. (a corporation) meets the definition of a "person" under the statute. For purposes of Section 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

### 2. *The "Acting Pursuant to" Requirement Is Satisfied*

20. The second requirement ("acting pursuant to" or "acting under" the direction of a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. The requirement is to be "liberally construed in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied" where a contractor removes a case involving alleged injuries from a product that it manufactured to federal specifications. *Sawyer*, 860 F.3d at 255; *accord Latiolais*, 951 F.3d at 291.

21. The requirement of "acting pursuant to" federal direction is met here because the effect of Plaintiff's action, at least in part, is to challenge Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9; *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[9] Accordingly, the federal government has long depended upon outside contractors like Chemguard to develop and supply MilSpec AFFF meeting federal specifications. Every court to address the issue has concluded that manufacturers of MilSpec AFFF have made and sold the product pursuant to federal direction for purposes of Section 1442(a)(1). *See Chemguard*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *8–9; MDL Order 1, at 3–6. That is so even where the MilSpec AFFF has been used in a civilian setting. *See* MDL Order 2, at

---

[9] Fulfilling the Roosevelts' Vision, *supra* n.4, at 37.

**CHEMGUARD'S NOTICE OF REMOVAL**                                                              9

3–5 (MilSpec AFFF products used at several civilian airports); MDL Order 3, at 3–6 (MilSpec AFFF used at a single civilian airport).

22.     In designing, manufacturing, and supplying the MilSpec AFFF that Mr. Wood allegedly was exposed to, Chemguard acted under the direction and control of one or more federal officers. Specifically, Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the MilSpec AFFF products in question were subject to various tests by the United States Navy before and after being approved for inclusion on the Qualified Products List maintained by the Department of Defense ("DoD").[10]

### 3. *The "Connected or Associated With" Requirement Is Satisfied*

23.     The third requirement for removal under Section 1442(a)(1) is that the removing defendant's actions pursuant to federal direction must be "connected or associated with" the lawsuit. *Latiolais*, 951 F.3d at 296. This requirement, sometimes termed the "nexus" requirement, erects a hurdle that "is quite low." *Isaacson*, 517 F.3d at 137. Courts "credit Defendants' theory of the case" when determining whether the requisite nexus exists between the lawsuit and the defendant's conduct under federal direction. *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3.

24.     This requirement is readily satisfied here. Mr. Wood's purported injuries arose at least in part from his alleged exposure to MilSpec AFFF. Where, as here, a plaintiff's claimed injuries arise at least in part from MilSpec AFFF, the nexus requirement is satisfied. *See Chemguard*, 2021 WL 744683, at *3; *Ayo*, 2018 WL 4781145, at *9; MDL Order 1, at 5–6; MDL Order 2, at 5; MDL Order 3, at 5–6.

---

[10] *See* Dep't of Defense, SD-6, *supra* n.6, at 1.

**CHEMGUARD'S NOTICE OF REMOVAL**                                                      10

### *4.  The "Colorable Federal Defense" Requirement Is Satisfied*

25. The fourth requirement, that the defendant proffer a "colorable federal defense," is satisfied by Chemguard's assertion of the government contractor defense with respect to its manufacture and sale of MilSpec AFFF used by Mr. Wood.

26. At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254, that is, "that the defense is 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407). "[A]n asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Latiolais*, 951 F.3d at 297 (internal quotation marks and citations omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116. Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

27. Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

**CHEMGUARD'S NOTICE OF REMOVAL**                                                                                                    **11**

28.     Chemguard has satisfied these elements for purposes of removal. As discussed above, Naval Sea Systems Command approved reasonably precise specifications governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Chemguard's products appeared on the DoD's Qualified Products List, which could have happened only if Naval Sea Systems Command had determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use [fluorocarbon surfactants] . . . in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4; MDL Order 3, at 5; *see also Chemguard*, 2021 WL 744683, at *4.

29.     Moreover, the government was sufficiently informed regarding relevant alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. A contractor need not provide any warnings if the government, as here, is independently aware of material product hazards. *In re Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d 404, 435 (E.D.N.Y. 2004), *aff'd*, 517 F.3d 76 (2d Cir. 2008); *accord Betzner v. Boeing Co.*, 910 F.3d 1010, 1016 (7th Cir. 2018). The military specifications for AFFF have long included testing protocols and requirements for toxicity. The United States has long understood that AFFF may contain or break down into PFOA or PFOS; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that

this may raise environmental or human health issues.[11] By no later than 2001, DoD was aware of data purportedly showing fluorinated compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[12] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFOA or PFOS will be present (subject to recently imposed limits) in AFFF formulations.[13] *See Ayo*, 2018 WL 4781145, at \*12 ("That the DoD knows of the alleged risks of [fluorocarbon]-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

---

[11] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[12] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[13] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

30. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

31. The purpose of the government contractor defense is to prevent plaintiffs from using state-law tort claims to engage in "second guessing" of the discretionary judgments of federal officials embodied in government product specifications. *Boyle*, 487 U.S. at 511. Plaintiff's action seeks to do exactly that. She claims that Mr. Wood's alleged injuries arose at least in part from Chemguard's production and sale of AFFF manufactured to military specifications. Plaintiff alleges that MilSpec AFFF is defective and harmful because it contains PFOA or PFOS, but the use of those chemicals in MilSpec AFFF is expressly contemplated and allowed by the military specifications. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. In short, Plaintiff is attempting to use state tort law to attack design choices dictated by the government. The government contractor defense precludes such an attack. *See id.* at 509.

32. The viability of the government contractor defense as applied to the manufacture of MilSpec AFFF is a central issue in the MDL. After extensive briefing on certain defendants' motion for summary judgment on the defense, the court denied the motion by order dated September 16, 2022, finding genuine issues of fact on the *Boyle* elements. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, Order Denying Partial Summary Judgment, ECF No. 2601 (D.S.C. Sept. 16, 2022). Thus, the defense will raise issues for trial. A defense that presents triable issues is by definition better than merely "colorable." *See 3M Combat Arms Earplugs Prods. Liab. Litig.*, 2020 WL 5835311, at *2 (defense may be colorable for purposes of § 1442(a)(1) even if it *fails* to survive summary judgment).

WHEREFORE, Chemguard hereby removes this action from the District Court of Tarrant County, Texas to this Court.

RESPECTFULLY SUBMITTED this 29th day of November, 2022.

    Respectfully submitted,

    */s/ Peter L. Loh*
    Peter L. Loh
    Texas Bar No. 24036982
    Stephen A. Jones
    Texas Bar No. 24101270
    **FOLEY & LARDNER LLP**
    2021 McKinney Avenue
    Suite 1600
    Dallas, Texas 75201
    (214) 999-3000 – Telephone
    (214) 999-4667 – Facsimile
    ploh@foley.com
    sajones@foley.com

    **COUNSEL FOR TYCO FIRE PRODUCTS LP AND CHEMGUARD INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2022, I electronically filed a true and correct copy of the foregoing with the Clerk of Court via CM/ECF, which will send notice of the same to all parties of record. I further certify that I have furnished a true and correct copy of the foregoing to counsel for Plaintiff via electronic mail and U.S. Mail to the following address:

> *Ann Ellison-Wood, Individually and as Representative of the Estate of Eddy Wayne Wood, Deceased*
> **SLOAN, HATCHER, PERRY, RUNGE, ROBERTSON & SMITH**
> c/o John D. Sloan, Jr. and Emma Roddy
> 101 East Whaley Street
> P.O. Drawer 2909
> Longview, Texas 75606-2909
> Telephone: (903) 757-7000
> Facsimile: (903) 757-7574
> jsloan@sloanfirm.com
> eroddy@sloanfirm.com

*/s/ Peter L. Loh*
Peter L. Loh